UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

NUMBER: 6:18-CR-00032-CHB

UNITED STATES OF AMERICA                                                    PLAINTIFF

V.

JORDAN RYAN TURNER                                                          DEFENDANT

**JORDAN RYAN TURNER'S SENTENCING MEMORANDUM**

Jordan Ryan Turner, by counsel, submits this Sentencing Memorandum in support of a short sentence of imprisonment, a significant period of home detention with electronic monitoring, and supervised release with conditions. This sentence reflects the nature and circumstances of Mr. Turner's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2).

### INTRODUCTION

**A. Nature and Circumstances of Mr. Turner's History and Characteristics.**

Jordan Ryan Turner was born on March 28, 1988 in Pineville, Kentucky. Jordan Turner's parents, Harold and Debbie Turner divorced when Jordan was 23 years old. Jordan's father Harold Turner, who is age 56, is disabled and resides in Tennessee. Jordan Turner's mother Debbie Mills, who is age 61, is a retired school teacher and lives in Pineville, Kentucky. Jordan Turner has one (1) maternal half-sister, Brandi King, who is 41 years old and lives in Middlesboro, Kentucky. Jordan has never been married and has no children.

Jordan Ryan Turner has been a lifelong resident of Bell County, Kentucky. After graduating high school, Jordan Turner earned a Bachelor of Arts in General Studies and Health Sciences from Eastern Kentucky University. Jordan has almost completed a degree in Master of Arts in Special Education from Union College. Jordan is 1 class shy of completion of said degree.

Jordan has previously volunteered at "Angel Tree" program that anonymously provides specifically requested gifts to impoverished children at Christmas. Jordan also operated a youth basketball league in Bell county and had volunteered with the Kentucky Adapted Physical Education program in Richmond, Kentucky. There was never any allegations of misconduct with any of these volunteer activities.

After high school, Jordan worked part time for Binghamtown Baptist Church for about two (2) years. Further, after high school he worked as a substitute teacher and basketball coach. Jordan was employed as a faculty member for the Bell County Board of Education from 2013 until April 2018. Jordan also served as a basketball coach for Bell County High School (BCHS).

Jordan has suffered from insomnia since he was a teenager. Further, he has had problems with depression and anxiety since his early 20's. Jordan has abused Ambien and alcohol for a number of years prior to his incarceration. His substance abuse began as a means of self medicating his insomnia. He was using Ambian about three (3) times per day. He also used alcohol as means of going to sleep. Jordan's criminal history consist of minor traffic charges.

Jordan Ryan Turner, beginning on or about February 19, 2018 and continuing through on or about April 3, 2018, used Facebook Messenger (FM) and Kik Messenger

(KM) to persuade and induce minor males to engage in sexually explicit conduct. Jordan Turner asked minors send to him visual depictions of the minors penises.

On March 31, 2018, the Kentucky State Police (KSP) was contacted by the mother of a 14-year-old male student of BCHS. The mother advised KSP she had located inappropriate Facebook messages between her son and Jordan. During said conversation Jordan made inappropriate references to the child's penis, calling him a "needle dick" and requesting a picture of his genitalia to be sent to Jordan to "prove it was not small". On April 18, 2018, another BCHS student/basketball player reported that Jordan had asked him for pictures of his penis via Facebook Messenger.

The FBI had submitted 895 pictures which are mostly depictions of penises with no faces visible. Jordan Turner would use KM application and would identify himself as a minor in some KM discussions.

**GUIDELINE DISCUSSION**

While this Court must still correctly calculate the guideline range, *Gall v. United States*, 552 U.S. 38, 49 (2007, it may not treat that range as mandatory or presumptive, *id.* at 51; *Nelson v. United States*, 555 U.S. 350, 352 (2009), but must treat it as "one factor among several" to be considered in imposing an appropriate sentence under § 3553(a). *Kimbrough v United States*, 552U.S. 85, 90 (2007) )(portions of this memorandum was taken fromhttps://www.fd.org/docs/select-topics---sentencing/sample-sentencing-memo-in-child-pornography-case.pdf). The Court must "consider all of the § 3553(a) factors," "make an individualized assessment based on the facts presented," *id.* at

49-50, and explain how the facts relate to the purposes of sentencing. *Id*. at 53-60; *Pepper v. United States*, 131 S. Ct. 1229, 1242- 43 (2011).

The Court's "overarching" duty is to "'impose a sentence sufficient, but not greater than necessary' to accomplish the goals of sentencing." *Id*. at 101; *Pepper*, 131 S. Ct. at 1242-43. A key component of Supreme Court law, designed to ensure that the guidelines are truly advisory and constitutional, is the authority of this Court to disagree with a guideline as a matter of policy. Because "the Guidelines are now advisory . . . , as a general matter, courts may vary [from Guidelines ranges] based solely on policy considerations, including disagreements with the Guidelines." *Kimbrough*, 552 U.S. at 101-02 (internal punctuation omitted) (citing *Rita v. United States*, 551 U.S. 338, 351 (2007) (district courts may find that the "Guidelines sentence itself fails properly to reflect § 3553(a) considerations").

As the Supreme Court held in *Kimbrough*, because "the cocaine Guidelines, like all other Guidelines, are advisory only," it "would not be an abuse of discretion for a district court to conclude when sentencing a particular defendant that the crack/powder disparity yields a sentence 'greater than necessary' to achieve § 3553(a)'s purposes, even in a mine-run case." *Kimbrough*, 552 U.S. at 91, 109-10; *see also Spears v. United States*, 555 U.S. 261, 267 (2009) ("[D]istrict courts are entitled to vary from the crack cocaine Guidelines in a mine-run case where there are no 'particular circumstances' that would otherwise justify a variance from the Guidelines' sentencing range."). Congressionally directed guidelines are just as advisory as any other guideline and therefore equally subject to policy-based variances. In *Vazquez v. United States*, 130 S. Ct. 1135 (2010), the Supreme Court remanded for reconsideration in light of then-Solicitor General

Kagan's position that "all guidelines," including congressionally-directed guidelines, "are advisory, and the very essence of an advisory guideline is that a sentencing court may, subject to appellate review for reasonableness, disagree with the guideline in imposing sentencing under Section 3553(a)." U.S. Br. at 11, *Vazquez v. United States*, No. 09-5370 (Nov. 2009). As the Sixth Circuit has previously recognized, "*all* of the sentencing guidelines are advisory," including those directed by Congress. *United States v. Michael*, 576 F.3d 323, 327 (6th Cir. 2009)(emphasis in original). Congressional directives "tell the Sentencing Commission, not the courts, what to do," and "a directive that the Commission specify a particular Guidelines range is not a mandate that sentencing courts stay within it." *Id*. at 328.

This Court may thus properly find that the child pornography guideline was not developed by the Commission in its characteristic institutional role of basing its determinations on empirical data and national experience, *see Kimbrough*, 552 U.S. at 109-10, consistent with the Supreme Court's repeated recognition that when a guideline was not developed by the Commission based on empirical data of past sentencing practices and national sentencing experience, it is not likely that the guideline "reflect[s] a rough approximation of sentences that might achieve § 3553(a)'s objectives," and that a policy-based variance from such a guideline is not subject to "closer review" and is "not suspect." *See Kimbrough*, 552 U.S. at 109-10; *Spears*, 555 U.S. at 264; *Rita*, 551 U.S. at 348, 349-50.

In *Bistline*, the Sixth Circuit made a distinction between guidelines that are directed by Congress (like much of the child pornography guideline), and guidelines that are chosen by the Commission (like the drug guidelines at issue in *Kimbrough*, which

were directly based on congressional policy but not specifically required by Congress). *See United States v. Bistline*, 665 F.3d 758, 763-64 (6th Cir. 2012). With respect to guidelines chosen by the Commission, when the Commission "makes a policy decision for reasons that lie outside its [empirical] expertise," the resulting guideline is "vulnerable on precisely that ground." *Id*. With respect to guidelines directed by Congress, "the district court that seeks to disagree with the guideline on policy grounds faces a considerably more formidable task than the district court did in *Kimbrough*." *Id*. at 764. "[W]ith respect to those enhancements" that were directed by Congress, the district court "must refute . . . Congress's reasons." *Id*. This Court "may still disagree with the policies embodied in [congressional] directives," but "to survive the close scrutiny that follows, the court must explain its disagreement in terms that are persuasive on policy grounds." *Id*. at 763.

## ARGUMENT

The Court should sentence the Defendant to a short sentence of imprisonment, a significant period of home detention with electronic monitoring, and supervised release with conditions. This sentence reflects the nature and circumstances of Jordan Turner's offense and his history and characteristics, and is "sufficient, but not greater than necessary" to serve the purposes of sentencing set forth at 18 U.S.C. § 3553(a)(2). The law is clear that this Court in making its "individualized assessment" of the defendant, must consider all the facts and circumstances in fashioning a sentence which meets § 3553(a)'s express mandate of imposing a sentence that is "sufficient, but not greater than necessary" to meet the purposes imposed by law. 18 U.S.C. § 3553 states, "(a) The court, in determining the particular sentence to be imposed, shall consider— (1) the nature and

circumstances of the offense and the history and characteristics of the defendant."18 U.S.C. § 3553(2) states, "the need for the sentence imposed— (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;(B) to afford adequate deterrence to criminal conduct;(C) to protect the public from further crimes of the defendant; and(D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The guidelines total offense level is 35 and the Defendant's criminal history category is I. This puts the guideline imprisonment range from 168 months to 210 months(14 years to 17.5 years). Statutorily, the minimum term of imprisonment is 15 years. Jordan Turner is a low risk to reoffend due to the fact that his only prior criminal history is minor traffic offenses. With Mr. Turner's background with minor traffic offenses and college education, the penalty is harsh. Jordan Turner's has suffered from insomnia since he was in his teens. He had been abusing ambien and alcohol for several years prior to incarceration.

Also, considering the fact that he never produced any videos of minors and there was never any accusations that he had any inappropriate physical contact with any minors. *See United States v. Marshall*, 870 F. Supp. 2d 489, 491-92 (N.D. Ohio 2012) (rejecting presumption that "those who view child pornography are indistinguishable from those who actually abuse children," finding instead that the "[e]mpirical data strongly suggests that viewing child pornography does not equate to child molestation"); *United States v. Kelly*, 868 F. Supp. 2d 1202, 1207-08 (D.N.M. 2012) (rejecting

government's argument that guideline range is appropriate because of the "chance that [defendant] will molest children in the future, or that he has in the past," as this "speculation is directly contrary to submissions by Kelly's therapist and Kelly's psychiatrist," the defendant "has never been accused of hands-on abuse," "empirical disproves the fear that the typical child pornography defendant will go on to molest children," and "[a]ny Guideline based on unsupported fears, rather than actual evidence, is far more likely to render an unreasonable sentence"); *United States v. Cruikshank*, 667 F. Supp. 2d 697, 703 (S.D. W.Va. 2009) ("Rarely able to catch the monsters that create the images, society reflexively nominates the consumers of this toxic material as proxies for the depraved producers and publishers."); *United States v. Phinney*, 599 F. Supp. 2d 1037, 1045 n.10 (E.D. Wis. 2009) ("[C]ourts should not assume that a defendant has or will commit additional crimes without a reliable basis."); *United States v. Grober,* 595 F. Supp. 2d 382, 404 (D.N.J. 2008) ("[T]he Court cannot make [Defendant] a surrogate for the monsters who prey on child victims through actual contact."), *aff'd* 624 F.3d 592 (3d Cir. 2010).

      Jordan Turner is not a violent offender and his prior criminal history is only minor traffic offenses. With the level of education that Jordan has and a low risk criminal history he is unlikely to reoffend. Further, Jordan Turner has very close family ties and his family strongly support him. Jordan is close to his mother and his sister. He will be living with his mother upon completion of a sentence. Having close family ties and supervised release conditions would ensure that Jordan Turner would not reoffend.

In enacting the Sentencing Reform Act, Congress did "not favor one purpose of sentencing over another," except that rehabilitation was not to be a reason to impose a sentence of incarceration. *See* S. Rep. No. 98-225, at 67 (1983). Rather, "each of the four stated purposes should be considered in imposing sentence in a particular case," and "one purpose of sentencing may have more bearing on the imposition of sentence in a particular case than another purpose has." *Id*. at 68. In choosing what kind of sentence to impose, the court "must consider" all of the purposes and factors set forth in § 3553(a). *Id*. at 119. "Whether [imprisonment] should be imposed when authorized is a question to be resolved after balancing all the relevant considerations." *Id*.; *see also United States v. Bridgewater*, 479 F.3d 439, 442 (6th Cir. 2007)("often one or two [purposes] prevail, while others pale").

The Statutory minimium provides for sentence disparities amount defendants with similar records and found guilty of similar crimes. 18 U.S.C. § 3553(a)(6) states, "...the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."

This Court must consider the "need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct." 18 U.S.C. §3553(a)(6). Whether any difference among sentences is warranted or unwarranted depends on the individual circumstances of each case and their relationship to the purposes of sentencing. "Unwarranted disparity is defined as different treatment of *individual* offenders who are similar in relevant ways, or similar treatment of *individual* offenders who differ in characteristics that are relevant to the purposes of sentencing."

U.S. Sent'g Comm'n, *Fifteen Years of Guidelines Sentencing: An Assessment of How Well the Federal Criminal Justice System Is Achieving the Goals of Sentencing Reform* 113 (2004).

  In the highly publicized Jared Fogle case, the Federal prosecutors asked for a 12 and ½ year sentence and Judge Tanya Walton Pratt sentenced Jared Fogle to 15 years and 8 months.  *http://money.cnn.com/2015/11/19/news/companies/jared-fogle-jail-sentence/*. Jared Fogle was charged with one (1) count of distribution and receipt of child pornography and conspiracy to distribute and child pornography per 18 U.S.C. 2252(a)(2) and one (1) count of travel to engage in illicit sexual conduct with a minor and attempting to travel to engage in illicit sexual conduct with a minor per 18 U.S.C. 2423(b). *See U.S v. Jared Fogle Information dated August 19, 2015*. Around March 2011 and on or about January 30, 2015, the head of Fogle's charity used 12 Victims to engage in sexually explicit conduct for the purpose of secretly producing Visual depictions of such conduct. This included multiple Video and images. These images and Videos included indecent exhibition of the genitals or pubic area of the minors, while some material also included other sexually explicit conduct depending upon the minors involved and precise content. *Id*. These victims did not know that they were being secretly filmed. Rather, the images or Videos were produced using multiple hidden cameras concealed in clock radios positioned so that they would capture the minors changing clothes, showering, bathing, or engaging in other activities. These images and videos where then distributed to Fogle. *Id*. Further, Fogle *engaged in sexual acts with two minors* and solicited sexual acts from these minors. Fogle repeatedly sent text messages to several escorts other minor victims

soliciting them to provide him with access to minors as young as 14 to 15 years for purposes of commercial sex acts with him. *Id.*

The Fogle case involved interstate travel to pay minors for sex, as well as at least 400 child pornography videos in which Fogle received many from the head of his charity. <u>http://www.npr.org/sections/thetwo-way/2015/11/19/456622271/jared-fogle-to-learn-sentence-for-sex-with-minors-child-pornography</u>.

> "[Mr. Fogle's] child pornography crime began when he learned that alleged co-conspirator Russell Taylor was sexually exploiting a 14 year old girl in March 2011. At that time, Mr. Fogle did nothing to stop the abuse or report it to authorities, but chose instead to receive and repeatedly view the child pornography involving the girl and those other minors produced by his alleged co-conspirator in the years that followed. It total, Mr. Fogle admitted in court pleadings filed today that his actions caused the sexual victimization of a total of 12 minors in Indiana before his co-conspirator's arrest in April 2015. He preyed on minor victims who did not have the ability to protect themselves."

*Id. quoting U.S. Attorney's office.*

Authorities said Fogle offered to pay adult prostitutes a finder's fee if they could connect him with minors for sex acts, including some as young as 14 or 15 years old. <u>http://www.chicagotribune.com/news/nationworld/ct-jared-fogle-subway-child-porn-20150819-story.html</u>.

Jordan Turners actions is not near as serious at the actions of Jared Fogle, yet Fogle got sentenced to a term of imprisonment of 15 years and 8 months while the statutory minimum of Jordan Turner is 15 years. Unlike Fogle, Turner never produced any videos and was not having sex with the children. Unlike Fogle, Turner never did secretly film any children.

In the highly publicied original Jeffery Epstein case, he received a sentence of 13 months in a private wing of a county jail with work release., *explained., 2019*. Epstein, the money manager was accused of sexually abusing dozens of underage girls, was indicted in a 53 page sex crimes indictment in 2007. *Id*. Epstein "ultimately got just 13 months in a county jail, thanks to a plea deal signed by US attorney Alexander Acosta, who would later become secretary of labor under President Trump." *Id*. Further, the article goes on to state, "Jennifer Araoz said in an interview with *Today* that Epstein had forcibly raped her in 2002, when she was 15 years old." *Id*. After the death of Epstein, two women have come forward stating that Epstein had raped them while he was on work release from his 13 month sentence at the county jail. *Id.* The article also talks about Courtney Wild who recruited 70 or 80 girls for Epstein and she stated, "[h]e wanted them as young as I could find them." *Id.*

Again Jordan Turners actions were not as serious of Jeffrey Epstein's original case but the Court only sentenced him to 13 months in a county jail with work release. Epstein's indictment was 53 pages long in that case while Jordan Turner's was only 4 pages. Yet Jordan Turner is facing more years than months what Epstein served with work release.

In addition, technology has changed the nature of this offense. In the past, child pornography had to be obtained in a risky and secretive manner for substantial sums of money, whereas today, images of child pornography are available for free in the privacy of one's home, with no planning and minimal effort. As a result, less dangerous people

commit this offense than was previously the case, even though the guideline range is much higher than it was previously. Before widespread dissemination on the Internet, only those bold enough to seek out child pornography by contacting suppliers directly or through the mail were able to obtain it. In 1994and 1995, the government prosecuted a total of only 90 defendants convicted of possessing, receiving, or distributing child pornography, and only 24% used a computer. *See* U.S. Sent'g. Comm'n, *Report to the Congress: Sex Crimes Against Children* 29 (1996) [U.S. Sent'g Comm'n, *1996 Report*]. In 2011, the government prosecuted 1,645 defendants convicted of possessing, receiving, or distributing child pornography, and 97.4% used a computer. U.S. Sent'g. Comm'n, *Use of Guidelines and Specific Offense Characteristics* (2011); U.S. Sent'g Comm'n, *2011Sourcebook of Federal Sentencing Statistics*, tbl.17.

There is empirical evidence that there is no relationship between sentence length and general or specific deterrence, regardless of the type of crime. *See* Andrew von Hirsch *et al.*, *Criminal Deterrence and Sentence Severity: An Analysis of Recent Research* (1999) (concluding that "correlations between sentence severity and crime rates . . . were not sufficient to achieve statistical significance," and that "the studies reviewed do not provide a basis for inferring that increasing the severity of sentences generally is capable of enhancing deterrent effects"); MichaelTonry, *Purposes and Functions of Sentencing*, 34 Crime and Justice: A Review of Research 28-29 (2006) ("[I]ncreases in severity of punishments do not yield significant (if any) marginal deterrent effects. . . . Three National Academy of Science panels, all appointed by Republican presidents, reached that conclusion, as has every major survey of the evidence."); David Weisburd *et*

*al.*, *Specific Deterrence in a Sample of Offenders Convicted of White-Collar Crimes*, 33 Criminology 587 (1995) (finding no difference in deterrence for white collar offenders between probation and imprisonment); Donald P. Green & Daniel Winik, *Using Random Judge Assignments to Estimate the Effects of Incarceration and Probation on Recidivism among Drug Offenders*, 48 Criminology 357 (2010) (study of over a thousand offenders whose sentences varied substantially in prison time and probation found that such variations "have no detectable effect on rates of re-arrest," and that "[t]hose assigned by chance to receive prison time and their counterparts who received no prison time were re-arrested at similar rates over a four-year time frame").

This Court is required to consider "the kinds of sentences available" by statute. 18 U.S.C. § 3553(a)(3).  The Sixth Circuit recently indicated that a sentence of one day in custody, a significant period of home confinement, and ten years of supervised release with conditions would be a sufficient sentence in this case. In *United States v. Robinson*, 669 F.3d 767 (6th Cir. 2012), the defendant possessed 7,100 images, including images of torture and bondage, and the guideline range was 78-97 months. The judge varied downward based on Robinson's individualized circumstances, which included his older age (43) and a "debilitating back condition," and imposed a sentence of one day in prison and five years' supervised release, without any period of home confinement. *Id.* at 772, 775. Although the Sixth Circuit reversed the sentence as substantively unreasonable, its analysis indicates that if the court had imposed a period of home confinement of 12 or 18 months, the sentence would have been sufficient. First, it said that the sentence would not deter others because it was "devoid of any significant period of incarceration, home

confinement, or substantial fine." Second, in discussing the need to avoid unwarranted disparities, it distinguished the sentence imposed in Robinson's case from two other one-day sentences it had previously affirmed, *see United States v. Stall*, 581 F.3d 276 (6th Cir. 2009), and *United States v. Prisel*, 316 F. App'x 377 (6th Cir. 2008), on the ground that those sentences included a significant fine or period of home detention. *Id*. at 779.

In *Stall*, the defendant had only 18 images at the time of his arrest, but he had downloaded, viewed, then deleted an unknown number of images over a period of at least five years. He received the enhancement for images depicting sadistic or masochistic conduct, and faced a guideline range of 57-71 months. 581 F.3d at 276. In light of the evidence and arguments at sentencing, the Sixth Circuit upheld as reasonable the sentence of one day in prison, 12 months' home confinement, 10 years' supervised release, and a $5,000 fine, emphasizing that the defendant was in treatment while monitored on supervised release. *Id.* at 277-78, 283.13 In distinguishing *Stall*, the court in *Robinson* described Stall's sentence as "more severe than Robinson's" because it included a "significant period" of home confinement, and emphasized that the district court in *Stall* "conduct[ed] an extensive analysis of how a [five-year] term of supervised release would restrict [the defendant's] freedom and protect the public and explain[ed] why the district court believed this sentence will deter similar offenders and why this case warranted a variance." *Robinson*, 669 F.3d at 779 (alterations in original, internal quotation marks omitted).

In *Prisel*, the defendant possessed 1,189 images and had paid for videotapes. Under a previous version of the guideline (before the PROTECT Act increases), the applicable guideline range was 27-33 months. 316 F. App'x at 379. Citing a

psychological evaluation indicating the defendant presented no danger to children, the defendant's mental and emotional condition, and family responsibilities, the district court imposed a sentence of one day in prison, three years' supervised release, 18 months home confinement, and a $6,000 fine. *Id.* at 380. In affirming the sentence, the Sixth Circuit emphasized the fact that the sentence included 18 months of home detention during the period of supervised release. *Id.* at 385-86.

In distinguishing *Prisel*, the court in *Robinson* said that Prisel's sentence was "more severe than Robinson's" because it included a "significant period" of home confinement. *Robinson*, 660 F.3d at 779.14 In addition, although there was no policy disagreement in *Robinson*, the court of appeals acknowledged that there are grounds for a policy disagreement with the child pornography guideline. It said that an enhancement that applies in "almost every case"—such as the computer enhancement—is contrary to the purpose of enhancements, which "are meant to increase a sentence for conduct more aggravated than the typical type of offense," and that as a result, § 2G2.2 is "an anomaly." *Id.* at 778. Regarding the number-of-images enhancement, it said that "in the computer age, [it] ha[s] some doubt that the number of pictures alone captures the gravity of the crime of possession of child pornography." It recognized that "quantifiable measurements"—like the amount of drugs in a drug case, the amount of loss in a fraud case, and the number of images in a child pornography case—may overstate the seriousness of the offense. *Id.* at 778 & n.3. In particular, it suggested that the number-of-images enhancement overstates the gravity of the offense for those who share files but do not necessarily know the number of images to be received, and results in unwarranted

disparities because it applies to those who view, trade, and save a large number of files while ignoring those who view, trade, and delete the same.

The court in *Robinson* said that *Prisel* was decided under plain error review, *Robinson*, 669 F.3d at 779, but this is not correct. While the court in *Prisel* rejected some of the government's *new* appellate arguments under plain error review, it ultimately reviewed the sentence imposed for abuse of discretion: "[T]aking into account the totality of the circumstances, . . . we conclude that the district court did not abuse its discretion in departing downward 27 months from the advisory Guidelines range." *Prisel*, 316 F. App'x at 388. number. *Id.* at 778-79. It said the enhancement more appropriately applies to a defendant who "acquired a large number of images" "over a long period of time" and who "paid money" for images. *Id.* These cases make clear that the requested sentence is sufficient.

## CONCLUSION

For the reasons stated, Mr. Turner respectfully requests that this Court grant his request for a variance and impose some term of imprisonment , a period of home detention with electronic monitoring that is significant in this Court's judgment, and then supervised release with the conditions that he register as a sex offender with the State of Kentucky, and undergo any further treatment deemed necessary by the Probation Officer.

|  | Respectfully submitted, |
|---|---|
| /s/ Paul Howard | /s/ Stephen W. Owens |
| Paul Howard | Stephen W. Owens |
| 118 Carolina Ave. Ste B | P.O. Box 1426 |
| Pikeville, KY 41502 | Pikeville, KY 41502 |
| paulhowardjrlaw@gmail.com | owens.steve@att.net |
| Phone: 606-369-1807 | Phone: 606-437-6520 |
| Fax:606-432-4885 | Fax: 606-437-6521 |
| *Attorney for Jordan Turner* | *Attorney for Jordan Turner* |

## CERTIFICATE OF SERVICE

I herby certify that I electronically filed the above motion with the Clerk of the Court using the CM/ECF system, which will send notice of the electronic filing to counsel of record.

/s/ Paul Howard　　　　　　　　　　　　　　/s/ Stephen W. Owens
*Attorney for Turner*　　　　　　　　　　　　*Attorney for Turner*